JOHN C. SPRECHER, APPELLEE, V. ENGELBERT F. FOLDA
ET AL., APPELLANTS.

FILED JUNE 26, 1913.   No. 17,170.

1. **Mortgages: DEED AS MORTGAGE: ELECTION: EVIDENCE.** Where a
   grantee in possession of realty under a mortgage in the form
   of a warranty deed seeks to defeat the grantor's equity of re-
   demption by a parol settlement or by an oral election to treat
   the conveyance as an absolute deed instead of a mortgage, such
   facts must be clearly established by a preponderance of the evi-
   dence.

2. **Appeal: EQUITY: CONFLICTING EVIDENCE.** In an accounting in
   equity where, upon an issue of fact, the proof consisted largely
   of oral testimony which is in irreconcilable conflict, the findings
   of the district court thereon are entitled to be considered by the
   appellate court in determining the question of the sufficiency of
   the evidence to sustain the judgment.

APPEAL from the district court for Colfax county: CON-
RAD HOLLENBECK, JUDGE. *Affirmed.*

*George W. Wertz* and *Edgar M. Morsman, Jr.,* for ap-
pellants.

*John J. Sullivan* and *John C. Sprecher, contra.*

ROSE, J.

This is a suit in equity to adjudge a deed to the south
88 feet of lots 13, 14 and 15, block 80, in Schuyler, to be
a mortgage, to determine by an accounting the amount
due defendants from plaintiff, to permit him to redeem
the lots from the lien thus created, and to restore the legal
title to him upon the payment of his indebtedness.   The
Banking House of F. Folda, defendant, is a corporation
engaged in the banking business at Schuyler, and defend-
ant Folda is its cashier, manager and principal stock-
holder.   In the petition the following summarized facts
are pleaded in detail:   Plaintiff owed defendant $11,500
on a promissory note dated July 10, 1901, due in five years,

and bearing interest at the rate of 7 per cent. per annum. Being engaged in improving his lots, when the note was executed, he arranged with defendants to furnish him money as needed, not exceeding $8,500, in addition to the note described, with the understanding that they should collect from tenants rents amounting to $190 a month and apply them on his indebtedness. Pursuant to that arrangement defendants furnished him at various times between $1,500 and $2,000. Since July 12, 1901, they have collected the rents, but have failed to render a statement showing the amounts received by them or the balance of his indebtedness. Plaintiff does not know the amount of such balance, but alleges it does not exceed $12,500.

Some of the facts pleaded in the answer may be briefly stated as follows: In addition to the note for $11,500, dated July 10, 1901, plaintiff was then indebted to defendants in the sum of $3,000 on a note dated December 15, 1899, and bearing interest from July 10, 1901, at the rate of 8 per cent. per annum. On the latter date plaintiff and wife, by warranty deed recorded the same day, conveyed the premises to Folda, who entered into a written agreement to sell the property to plaintiff for $14,500. Pursuant to the contract of sale, plaintiff, by payment of various sums, had reduced the note for $11,500 to $9,900 December 4, 1902. In addition to the two notes described, defendants advanced to plaintiff from March 1, 1902, various sums, aggregating with interest $2,356.65. Plaintiff owed defendants December 4, 1902, $15,600, composed of the following items: Balance due on the note for $11,-500, $9,900; note dated December 15, 1899, $3,000, and interest thereon, $343.35; other loans $2,356.65. December 4, 1902, plaintiff took up the note for $11,500, and executed another note in favor of Folda for $12,600, bearing interest at the rate of 7 per cent. per annum and payable December 31, 1902, on which interest was paid monthly in the sum of $73.50 until July, 1904, when payments ceased. Plaintiff and wife verbally agreed with defendants, on or about July 1, 1904, that the contract of sale should be

canceled and that plaintiff should abandon all claims to the realty; defendants agreeing to release him from all of his obligations and indebtedness to them, to pay the taxes for 1903, and to release his home from the lien of a mortgage which had been given to secure his note for $3,000. The obligations thus assumed were performed by defendants, and they took possession of the premises as owners August 15, 1904; plaintiff acquiescing and making no objection until sometime prior to May 8, 1910. Defendants sold the south 88 feet of lots 13 and 14 to a lodge of the Odd Fellows, and transferred the title and possession to the purchaser October 4, 1904. The purchaser has been in possession as owner ever since, and has improved the building on the premises at an expense of $8,000. Plaintiff had full knowledge of the facts pleaded in the answer, remained silent for more than five years, asserted no right to the premises, nor made any claim against defendants in the meantime, but frequently asserted to Folda and others that he had sold the lots and had no interest therein. By reason of his conduct and silence he is estopped to assert any claim to the premises or to demand from defendants an accounting.

In a reply plaintiff alleged that the note for $3,000 had been merged in the note for $11,500, and denied any indebtedness beyond that pleaded in his petition. Such facts as were not stated in the petition or admitted in the reply were denied.

Upon a trial of the issues, the district court upheld the sale of the south 88 feet of lots 13 and 14 to the Odd Fellows, credited the purchase price of $12,000 on the indebtedness of plaintiff to defendants, found the balance due them to be $3,661.52, and permitted him to redeem the south 88 feet of lot 15 upon the payment of that sum. Defendants have appealed.

It is asserted that the decree is erroneous for the reason that plaintiff by an oral election abandoned and lost his right to redeem the premises. In this connection defendants invoke the rule that, where grantee is in possession of

realty under a mortgage in the form of a warranty deed, the grantor's equity of redemption may be defeated by a parol settlement or by an oral election to treat the conveyance as an absolute deed instead of a mortgage. *Stall v. Jones*, 47 Neb. 706. The loss of the right to redeem under such circumstances, however, depends upon the proof of the settlement or of an election to treat the deed as an absolute conveyance. In the present case it is conceded that the right of redemption existed under a deed absolute in form. Plaintiff admitted that he offered to allow Folda to retain the fee upon cancelation of all of his indebtedness to defendants, not exceeding $12,500, and upon the payment of about $7,000 to other creditors, and testified that the property was worth $20,000. He also testified that Folda agreed to these terms, but failed to keep his agreement and did not pay the other creditors. In his relations with plaintiff Folda was more than a mere mortgagee. He had lived in plaintiff's family. He became a brother-in law of plaintiff. He was a trusted adviser, looked after many of his financial and business transactions, collected his rents and applied them on his debts, and kept accounts of transactions between them. Where a verbal election to abandon the right to redeem is invoked by the lienor under such circumstances, the evidence should be more convincing than that upon which defendant relies. When all of the conditions are considered, there should not be a finding that plaintiff abandoned his right to redeem or that the parties executed an oral agreement to that effect.

In regard to the accounting, the controverted issue between the parties may be stated in this form: Was the indebtedness of $3,000 included in the later note for $11,500? The question is not easy to answer. The evidence is conflicting. Though there are two abstracts, the entire bill of exceptions has been read and considered. Accounts were kept under the direction of Folda, and they corroborate his testimony that the note for $3,000 was not included in the larger one. Plaintiff trusted Folda and did not

keep an account of their transactions. Their business relations extended over a number of years. Plaintiff, however, kept an account at Folda's bank, and in a few instances checks were drawn against it at the direction of Folda without plaintiff's knowledge. Plaintiff was financially embarrassed and could not direct his affairs independently of Folda. Both plaintiff and his wife testified that the indebtedness of $3,000 had been reduced by payments, but they could not give the amounts nor dates. They testified positively that Folda had said, before the larger note was executed, that it included plaintiff's entire indebtedness to defendants, and that he agreed to release the mortgage on their home. Plaintiff testified that afterward Folda did not claim that the item in dispute was unpaid nor make any demand for the interest thereon. Some minor circumstances tend to corroborate plaintiff. While there is some doubt about the correctness of the finding of the trial court, it is not more certain that the evidence as a whole requires a different conclusion.

AFFIRMED.

BARNES, SEDGWICK and HAMER, JJ., not sitting.